## Woods *versus* White.

1. A plea *puis darrein continuance* is in substitution of all previous pleas. It is followed by replication, &c., until an issue is formed.

2. To a scire facias sur mortgage the terre-tenant pleaded several pleas; and afterwards pleaded, *puis darrein continuance*, that the same cause of action had been litigated between the same parties in another court, upon distribution of the proceeds of a sheriff's sale of the mortgaged premises, wherein it was determined that the lien of said mortgage was discharged from the premises. The plea concluded with a verification by the record, and the plaintiff replied *nul tiel record*. Upon trial of this issue the record showed that the plaintiff had appeared, by counsel, before the auditor only for the purpose of calling his attention to the fact that the question whether the mortgage had been discharged was being litigated in another court, and if it were decided that it was discharged the plaintiff then claimed payment out of the fund; and he requested the auditor to postpone distribution until said question should be decided. The auditor declined to delay distribution, and reported that the mortgage was discharged; but he awarded the entire fund to a claim, which, he held, was a first lien. His report, after notice to the plaintiff, was confirmed, and not appealed from. *Held*, that such appearance was not a submission of the question of the lien of the mortgage to the jurisdiction of the auditor, and the plaintiff was not affected by his decision. The record, therefore, did not sustain the plea, and judgment should have been entered for the plaintiff.

3. The fact that a devisee of land, subject to the lien of a legacy, is also executor under the testator's will does not deprive him of the right to sell the land devised, take a purchase-money mortgage, and upon default sue it out and sell the premises, whereby the lien of the legacy is discharged.

February 18th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county* : Of January Term 1881, No. 58.

Scire facias sur mortgage, by Lydia Ann Woods against Edward White. The mortgage was executed by defendant to plaintiff for $5000, dated April 1st 1876, recorded April 6th 1876. Judgment was entered for want of an appearance, which was subsequently opened by the court on motion of Jamison Lott, terre-tenant, and the said Lott let into a defence. Lott thereupon pleaded payment with leave, &c., and a special plea averring the following facts: Prior to the execution of the mortgage in suit by Edward White, the mortgaged premises belonged to Isaac White, father of Edward White, who by his will, proved November 29th 1865, devised the same to the said Edward White, subject to a legacy of $1000 to one William Powell, a grandson of testator, subject to which charge the mortgage in suit was given. On January 25th 1877, after the date of the mortgage in suit, one Lewis Shallcross obtained a judgment in the Common Pleas, No. 4, of Philadelphia county against Edward White for $700, and under writs of fi. fa and vend. exp. issued thereon, the premises in question were on January 6th 1879,

[Woods v. White.]

sold at sheriff's sale to the said Jamison Lott for $800, and a sheriff's deed to him therefor was acknowledged January 11th 1879, and duly recorded. The special plea averred that by reason thereof the lien of the said mortgage was discharged from the land, and the title of Edward White became vested in the said Lott, free and clear from the lien of said mortgage.

After replication and issue joined on these pleas, the said Lott filed, by leave of the court, a plea *puis darrein continuance* averring, in substance, that since the last pleading it was so proceeded in the Common Pleas, No. 4, in the said suit of Shallcross *v.* Edward White, that the fund produced by the sheriff's sale under that judgment was referred to an auditor to report distribution thereof, before whom the plaintiff, Lydia Ann Woods, appeared by her counsel and " presented the same identical mortgage above sued upon, and claimed the said fund on account thereof; and thereupon the same identical cause of action now presented by the above pleadings arose and was duly contested between the same parties;" and that afterwards the auditor, after due notice to the plaintiff filed his report, which was duly confirmed by the court; by reason of which proceedings and judgment the lien of the said mortgage was divested from the premises, " as by the record remaining in the Court of Common Pleas, No. 4, more fully and at large appears, and this the said defendant is ready to verify by the said record, wherefore he prays judgment," &c.

The plaintiff replied to said plea *puis darrein continuance,* " that there is no such record of a claim by plaintiff of the fund before the auditor for distribution in the said suit of Shallcross *v.* White on account of the said mortgage, and there is no record that the same identical cause of action now presented by the above pleadings arose and was contested between the same parties and was adjudicated and determined in said suit, as by said defendant pleaded. Wherefore she prays that the said record may be seen and inspected by the court here, and for judgment in her behalf."

On the trial of the issue thus raised, before ALLISON, P. J., the terre-tenant, Jamison Lott, produced in evidence the exemplification of the record in the Common Pleas, No. 4, in the said suit of Shallcross *v.* White. The report of the auditor (part of said record) contained the following :

" Francis E. Brewster, Esq., represented Mrs. Lydia Ann Woods, who held a mortgage upon the premises in question, given by the said defendant, dated April 1st 1876, for $5000, and recorded April 6th 1876. Mr. Brewster stated that he appeared before your auditor for the purpose of calling attention to said mortgage (claiming it to be a first lien against said premises) and to proceedings pending in Court of Common Pleas No. 1, for the county of Philadelphia, of December Term 1878, No. 1470, wherein it was claimed that said mortgage had been discharged by

the sheriff's sale in question.    He also claimed, in case it shall be decided that said mortgage had been discharged, that the fund before your auditor for distribution should be awarded to his client, and desired your auditor to suspend the distribution of said fund until the said proceedings in Common Pleas No. 1, should be determined."

The auditor reported, inter alia, the following facts : The testator, Isaac White, devised the premises in question to his son, Edward White, subject to the legacy of $1000 to William Powell, and appointed the said Edward White his executor.    Edward White and wife, by indenture dated March 20th 1873, duly recorded, granted and conveyed the premises in question to Rosa Anna Coyne, in fee simple, under and subject to the payment of the said legacy.    The said grantee, her husband joining, gave a purchase-money mortgage of the same premises, of even date with the deed, to Edward White, duly recorded.    A scire facias was issued upon this mortgage in Common Pleas, No. 2, to December Term 1874, judgment obtained and execution issued, under which the mortgaged premises were sold at sheriff's sale and purchased by the said Edward White for $150, to whom a sheriff's deed was acknowledged February 19th 1876, and duly recorded.

On April 1st 1876, Edward White executed the mortgage in suit to Lydia Ann Woods.    On January 25th 1877, Lewis Shallcross, obtained in Common Pleas No. 4, the judgment against Edward White above mentioned, under which the premises were sold at sheriff's sale to said Lott, and a deed acknowledged January 11th 1879, under which sale the fund for distribution was produced.

The auditor reported as matter of law, 1. That the legacy to William Powell was a charge on the land under the will of Isaac White ; 2. That the sheriff's sale of the premises by the executor, Edward White, on his own mortgage against Rosa Anna Coyne, did not disturb the lien of said legacy, " as Edward White could not profit by his own wrong ;" 3. That the legacy was discharged by the sheriff's sale of the premises under the judgment of Lewis Shallcross against Edward White, and being the first lien upon the real estate so sold, is entitled to the fund in court.

The auditor, therefore, awarded the fund to the legatee, William Powell.    Notice of the filing of the report was accepted in writing by the several counsel who had appeared before the auditor, including the attorney for Lydia Ann Woods.    No exception being filed to the report, the same was confirmed.    Jamison Lott did not appear before the auditor.

The court, ALLISON, P. J., after argument, entered the following judgment: "And now, October 12th 1880, this cause coming on for trial, it is considered by the court that the plea *puis darrein continuance* filed April 13th 1880, by Jamison Lott, terre-

[Woods v. White.]

tenant in the above case, is a waiver of all the former pleas on the record filed by said terre-tenant, and the court enters judgment in favor of the said terre-tenant on the whole record upon the plaintiff's replication of *nul tiel record* to said plea *puis darrein continuance*."

The plaintiff thereupon took this writ of error, assigning for error the entering of judgment for the terre-tenant.

*Francis E. Brewster* (*F. Carroll Brewster* with him), for the plaintiff in error.—The only issue was that raised by the terre-tenant's plea *puis darrein continuance*, and the replication of *nul tiel record* thereto. A plea *puis darrein continuance* is a waiver of all former pleas filed. The defendant must stand or fall by it. It admits the original merits to be with the plaintiff, and rests the defence on some act or occurrence since the last continuance of the cause : Lyon v. Marclay, 1 Watts 271 ; Wilson v. Hamilton, 4 S. & R. 239.

The record, when produced, did not support the allegations of the plea. It showed, not that the plaintiff claimed the amount of her mortgage out of the fund before the auditor, but, on the contrary, that she disclaimed title to any part of the fund, and claimed that the mortgage remained a lien on the land. True, she brought to the notice of the auditor, that the question whether the mortgage was discharged by the sale was being litigated in another court in a suit on the mortgage itself, and requested the auditor to postpone the distribution until that question should be determined, for the reason that *if* it should be determined that the mortgage was discharged, she would *then* claim on the fund. But the auditor went on, and the plaintiff here paid no further attention to the proceedings. The auditor undoubtedly erred in awarding the fund to the legatee, as it cannot be doubted that the legacy was discharged by the prior sheriff's sale under Rosa Anna Coyne's mortgage to Edward White, which was before the date of the plaintiff's mortgage ; but the plaintiff filed no exceptions to the report, because having no claim on the *fund*, the mode of its distribution was immaterial to her. Neither the plaintiff nor the terre-tenant was represented as a party litigant at the audit, and the record therefore did not support the plea, that " the same cause of action was litigated between the same parties, and duly adjudicated."

*Lewis Stover*, for the defendant in error.—The last plea filed which has been treated as a plea *puis darrein continuance*, does not necessarily waive the former pleas, but confirms them, and shows that what we had before pleaded as a fact had since been established by a court of competent jurisdiction. The record showed that at the time when the plaintiff issued her sci. fa. out

1 OUTERBRIDGE—15

[Woods *v.* White.]

of Common Pleas No. 1, the fund arising from the sale of tne premises, under the judgment, in Common Pleas No. 4, had been paid into the latter court, which court thereby first acquired jurisdiction to ascertain the existence of all liens and try all issues that could properly be litigated.   The question whether the plaintiff's mortgage had been discharged from the land and cast on the fund was such an issue.   The plaintiff could not, after Common Pleas No. 4, had acquired jurisdiction of this question, select another tribunal in which to raise the same question, and require the auditor, in No. 4, to delay distribution until it should be decided in No. 1.   If this rule would hold, every lien-creditor could go into separate courts, and delay distribution indefinitely.   The record further showed that the plaintiff's counsel did appear before the auditor, and "claimed, in case it shall be decided that said mortgage had been discharged, that the fund before the auditor for distribution should be awarded to his client."   The auditor did decide that the mortgage was discharged, by reason of the legacy being a prior lien, and the contingency having occurred, the plaintiff's language became absolute that he did claim the fund, and our plea is thus verified by the record.   If the plaintiff omitted to press her claim before the auditor, and to file exceptions to the report, that was her own fault.   She is concluded by the confirmation of the auditor's report : Towers *v.* Tuscarora Academy, 8 Barr 299 ; Noble *v.* Cope, 14 Wright 30 ; Finney's Appeal, 3 Barr 312 ; Gratz *v.* Lancaster Bank, 17 S. & R. 278 ; Yerkes's Appeal, 8 W. & S. 224.

Mr. Justice GORDON delivered the opinion of the court, February 28th 1881.

The sale of the land in controversy, under the mortgage of Rosa Anna Coyne to Edward White, discharged the lien of the legacy charged upon it by the will of Isaac White.   Of this Strauss's Appeal, 13 Wright 353, is conclusive.   The auditor, who was appointed to distribute the money made by the sale of the same property under the judgment of Shallcross against Edward White, came to a different conclusion.   He seemed to think that the sale by the devisee on his own mortgage was a fraud *per se* upon the legatee, and as a consequence did not discharge the lien of his legacy.   But this is a conclusion that cannot be sustained.   It is true that Edward White was the executor of his father's will, and as such required to act in good faith towards his father's creditors and legatees, but he was also devisee, and since, as such, he had the undoubted right to sell the land devised to him, so he had the right to secure himself, as to the purchase-money, by judgment or mortgage.

It then follows necessarily that he could compel the payment of such security by execution and sale of the land.   All this having been done in good faith, as in the absence of evidence to the con-

[Woods *v.* White.]

trary we are bound to presume, and the land having been sold on lawful process by act of law, the lien of the legacy was discharged from the land and attached to the money arising from its sale.

Prima facie then, the mortgage in suit was the first lien upon the premises and was not discharged by the sale on the Shallcross judgment. But it is urged that the submission of this mortgage to the consideration of the auditor, gave that officer jurisdiction over it, and that by reason thereof his decision was final and conclusive.

This question was raised in the court below by the defendant's plea of *puis darrein continuance*—a plea which is always pleaded by way of substitution, no proceedings being afterwards had on the previous pleadings. It may be either in bar or abatement, and, like other pleas, is followed by replication, &c., until an issue is regularly formed: Steph. Plead. (Tyler's ed.) 98; 2 Chit. Plead. 453. In the case in hand, the issue was formed under the replication of *nul tiel record*. What we have to do, therefore, is to examine the auditor's report, in the case of Shallcross *v.* White, for the purpose of ascertaining whether or not the question now presented was settled in that proceeding.

Whether this was so determined must, we think, depend upon the fact of the voluntary submission of the mortgage now in controversy to the judgment of the auditor, for we cannot for a moment entertain the idea that the lien of a first mortgage could be discharged by the unauthorized act of an auditor. Prima facie the auditor had nothing to do with it. He was making distribution of moneys raised under a subsequent judgment, and as to this fund the Woods mortgage had no standing and ought not to have been considered. It may be, indeed, if it were presented by the mortgagee as a lien on the fund, and was passed upon by the auditor, and by him postponed to what he considered a prior lien, his judgment unappealed from would be conclusive. It is indeed a fact that he did so pass upon this mortgage, and that, in his judgment, its lien was preceded by the Powell legacy, and was therefore divested by the sheriff's sale. Under these circumstances, it becomes important to know by what authority the auditor acted, whether or not the mortgagee submitted her mortgage for his judgment. The following is all that is exhibited by the auditor's report on this subject.

" Francis E. Brewster, Esq., represented Mrs. Lydia Ann Woods, who held a mortgage upon the premises in question, given by the said defendant, dated April 1st 1876, for $5000, and recorded April 6th 1876, in mortgage-book D. H. L. No. 2, p. 542. Mr. Brewster stated that he appeared before your auditor for the purpose of calling attention to said mortgage; claiming it to be a first lien against said premises; and to proceedings pending in the Court of Common Pleas No. 1, for the county of Philadelphia, of December

[Woods *v.* White.

Term 1878, No. 1470, wherein it was claimed that said mortgage had been discharged by the sheriff's sale in question. He also claimed, in case it shall be decided that said mortgage had been discharged, that the fund before your auditor for distribution should be awarded to his client, and desired your auditor to suspend the distribution of said fund until the said proceedings in Common Pleas No. 1, should be decided."

This was not a submission of the question in controversy to the auditor, the very converse. The counsel for the mortgagee claimed that the mortgage was a first lien, but gave notice, that should the Court of Common Pleas decide otherwise, he would claim the fund, and asked that the auditor's judgment be suspended until the pending suit should be determined. In short, he informed the auditor that, at that time, he had no standing before him, but might have, should the decision of the court, in the case then pending, be averse to his position, and asked *ex gratia* for a continuance.

It is thus obvious that nothing was submitted to the auditor which gave him jurisdiction over the subject-matter now in controversy: he was appealed to for nothing but a continuance, and that he refused to grant. It follows that upon the record exhibited there was nothing which curtailed the power of the court or altered the original status of the parties which were before it, hence it ought to have sustained the plaintiff's replication, and ordered judgment against the defendant for the whole amount of the mortgage.

> Judgment is reversed, and judgment for the plaintiff for the full amount of her mortgage with interest and costs. Judgment to be liquidated by the Prothonotary of the Court of Common Pleas.